[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 13, 2007
THOMAS K. KAHN
CLERK

No. 06-14140
Non-Argument Calendar

_____

BIA No. A23-617-690

CARIDAD JEREZ DE GARCIA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 13, 2007)**

Before HULL, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Caridad Jerez De Garcia petitions for review of the Board of Immigration

Appeals's ("BIA") dismissal of her appeal of the Immigration Judge's ("IJ") order denying her motion to reopen her deportation proceedings. After review, we deny De Garcia's petition for review.

## I. BACKGROUND

In 1983, De Garcia, a Cuban national, became a legal permanent resident ("LPR") of the United States. In 1991, De Garcia was convicted of cocaine trafficking in Florida state court and sentenced to four years in prison. On April 1, 1992, the Immigration and Naturalization Service ("INS") began deportation proceedings against De Garcia. The INS issued an Order to Show Cause and Notice of Hearing, charging De Garcia with being a deportable alien, pursuant to former Immigration and Nationality Act ("INA") § 241(a)(2)(A)(iii) and (B)(i), 8 U.S.C.A. § 1251(a)(2)(A)(iii) (1992), because of her cocaine trafficking conviction, which was both an aggravated felony and a controlled substance offense.

On June 22, 1993, at the initial deportation hearing, De Garcia appeared without counsel and acknowledged receiving a written copy of the Order to Show Cause. De Garcia stated her desire to be represented by a lawyer, and the IJ continued the deportation hearing. Because De Garcia was still in prison and her release date was approaching, the IJ repeatedly warned De Garcia that her final deportation hearing would be held in the coming months, that the notice of her

2

final deportation hearing would be sent to the address De Garcia provided, that De Garcia would need to keep the court informed of her address once she was released from prison, and that the final deportation hearing would proceed in absentia if she failed to appear. De Garcia indicated that she understood the IJ's warnings.

The final deportation hearing was scheduled for October 22, 1993. The INS sent the notice of the hearing by certified mail to 508 Louisa Street in Key West, Florida, an address found on a Form I-156 in De Garcia's INS file.[1] The post office returned the notice of the hearing undelivered with no forwarding address. De Garcia failed to appear at her final deportation hearing, and the IJ entered the deportation order in absentia.

In 2003, at Miami International Airport, De Garcia applied for admission to the United States as a returning LPR. The Department of Homeland Security ("DHS")[2] served De Garcia with a Notice to Appear, charging De Garcia with failing to obtain permission to reenter the United States after having been deported. While in removal proceedings, De Garcia and the DHS filed a joint motion to reopen the deportation proceedings, stating that notice of her hearing had not been

---

[1]The Form I-156, entitled "Deportation Docket Control Action Slip or Notice," listed De Garcia and her immigration case number and the following notation in the "Action" portion of the form: "released 508 Louisa Street Key West, FLA 33040." The form also stated that the action had been taken on September 13, 1993.

[2]The INS was abolished on March 1, 2003, and its functions were transferred to DHS. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)).

sent to her last known address. The motion also indicated that De Garcia had

appeared several times before DHS after her release from prison to renew her LPR

card. De Garcia sought to reopen her deportation proceedings so she could apply

for a waiver of inadmissibility pursuant to INA § 212(c).

The IJ denied the motion to reopen, finding that: (1) De Garcia had received

notice of the final deportation hearing at her last known address; (2) she was

ineligible for § 212(c) relief; and (3) that De Garcia had "self-deported" by leaving

the United States after an order of deportation had been entered against her.

De Garcia appealed to the BIA. The BIA affirmed the IJ's decision, finding

that the notice of hearing was proper because it was sent to De Garcia's last known

address by certified mail and that De Garcia failed to exercise due diligence in

determining the status of the deportation hearing or in keeping the Immigration

Court apprised of any change in her address.[3]

## II.  DISCUSSION

On appeal, De Garcia argues that the BIA violated her due process rights and

abused its discretion when it denied her motion to reopen her deportation

---

[3]The BIA also found that, pursuant to 8 C.F.R. §§ 1003.2(d) and 1003.23, it lacked jurisdiction to consider De Garcia's motion to reopen because she had departed the United States. As the government concedes, this Court recently concluded that the IJ and BIA retain jurisdiction to reopen proceedings where an alien has been removed from the United States following an in absentia order of removal for the purpose of addressing whether the alien received sufficient notice of the hearing. Contreras-Rodriguez v. U.S. Att'y. Gen., 462 F.3d 1314, 1317 (11th Cir. 2006) (relying on 8 C.F.R. § 1003.23(b)(4)(ii)).

proceedings because she did not receive notice of the final deportation hearing.

We lack jurisdiction to review a final order of removal if the alien is deported based on a conviction for an aggravated felony or controlled substance offense. 8 U.S.C. § 1252(a)(2)(C). "[T]he limitations on our jurisdiction to review a final order of removal, including any pertinent statutory amendments, also control our jurisdiction to review an order denying a motion to reopen a final order of removal." Ali v. U.S. Att'y Gen., 443 F.3d 804, 809 n.2 (11th Cir. 2006). However, we retain jurisdiction to review constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(D); see also Camacho-Salinas v. U.S. Att'y Gen., 460 F.3d 1343, 1346-47 (11th Cir. 2006).[4] Thus, the only issue we may address is De Garcia's due process claim.[5]

An alien who is present in the United States is entitled to due process under the Fifth Amendment. Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1311 (11th Cir. 2001). To comport with due process, an alien must be given notice and an opportunity to be heard in the removal proceedings. Sebastian-Soler v. U.S.

---

[4]Although we also retain jurisdiction to determine our jurisdiction, De Garcia does not contest that she is an alien who is removable based on a disqualifying offense. See Moore v. Ashcroft, 251 F.3d 919, 923 (11th Cir. 2001).

[5]We review constitutional challenges de novo. Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003).

Att'y Gen., 409 F.3d 1280, 1287 n.14 (11th Cir. 2005).[6]  However, due process

does not require that the alien receive actual notice of a hearing; rather, due process

"is satisfied if notice is accorded in a manner 'reasonably calculated' to ensure that

notice reaches the alien."  Anin v. Reno, 188 F.3d 1273, 1278 (11th Cir. 1999)

(quotation marks omitted).

De Garcia was ordered deported under the INA prior to the Illegal

Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.

L. No. 104-208, § 304, 110 Stat. 3009-546, 3009-587.  Thus we discuss only pre-

IIRIRA law.

Under the pre-IIRIRA INA, notice of the time and place of the deportation

hearing was to be provided by certified mail.  8 U.S.C.A. § 1252b(a)(2)(A) (1993).

However, an alien was required to provide the Attorney General with a written

record of any change of address, and the INS was not required to provide notice of

the hearing if the alien failed to comply with this address-notification requirement.

See id. § 1252b(a)(1)(F), (a)(2) & (c)(2).  If the alien failed to appear at the

deportation hearing, the alien was required to be deported in absentia if the INS

---

[6]An alien also can state a due process claim by showing that she was deprived of a liberty interest without due process of law, which caused substantial prejudice.  Sebastian-Soler, 409 F.3d at 1287 n.14.  However, "aliens do not enjoy a constitutionally protected liberty interest in a purely discretionary form of relief."  Garcia v. U.S. Att'y Gen., 329 F.3d 1217, 1224 (11th Cir. 2003).  The decision to grant or deny a motion to reopen is a discretionary decision, even if the alien demonstrates that she is entitled to relief.  See 8 C.F.R. § 1003.2(a).  Therefore, De Garcia had no protected liberty interest in having her motion to reopen granted and cannot state a due process claim on this basis.

established by clear, unequivocal and convincing evidence that written notice had been given to the alien and that the alien was deportable. Id. § 1252b(c)(1).

Furthermore, written notice was deemed sufficient if it was made to the most recent address reported by the alien. Id. § 1252b(c)(2); see also Dominguez v. U.S. Att'y Gen., 284 F.3d 1258, 1260 (11th Cir. 2002) (explaining that "an alien has an affirmative duty to provide the government with a correct address" and that "[f]ailing to provide the INS with a change of address will preclude the alien from claiming that the INS did not provide him or her with notice of a hearing"); In re Grijalva, 21 I. & N. Dec. 27, 33-34, 37 (BIA 1995) (concluding that proof of actual service was not required where the notice of the hearing was sent to the alien's last known address as provided by the alien and that the alien could overcome the presumption of delivery of the notice by providing substantial and probative evidence that "nondelivery was not due to the respondent's failure to provide an address where he could receive mail"). Under pre-IIRIRA law, the Order to Show Cause also warned the alien of the address-notification requirement and the consequences for failing to comply. 8 U.S.C.A. § 1252b(a)(1)(F) (1993).[7]

Here, there was no violation of De Garcia's due process rights. De Garcia

---

[7]De Garcia does not facially challenge the notice and removal in absentia procedures of the pre-IIRIRA INA. We previously have upheld the constitutionality of those procedures. See Anin, 188 F.3d at 1277-78.

7

appeared in person at the initial hearing. At the initial hearing, De Garcia acknowledged receiving the Order to Show Cause, which informed her of the requirement to keep the government apprised of her address and warned her of the consequences if she failed to do so. In addition, the IJ emphasized to De Garcia at the initial hearing (1) that her deportation proceedings were underway; (2) that it was imperative to provide the INS with her current address; (3) the consequences of failing to appear at the next deportation hearing; and (4) that the hearing would be commencing in the coming months.

In providing De Garcia notice of the final deportation hearing, the INS followed the notice procedures in the pre-IIRIRA INA. Specifically, De Garcia's notice of the final deportation hearing was sent by certified mail to her last known address as reflected in her immigration records. There is no evidence in the record that De Garcia advised the INS or the Immigration Court in writing of a change in her address. Therefore, the sending of the notice of the final deportation hearing to the last address noted in De Garcia's immigration file was a method "reasonably calculated" to ensure that De Garcia received notice. Furthermore, the IJ was authorized to proceed with the deportation proceedings in absentia. De Garcia's due process claim is without merit.

**PETITION DENIED.**

8